UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEREMY GANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00251-JMS-MJD |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# ENTRY

The outcome of some motions turns not on the resolution of complicated issues of substantive law or multilayered evidentiary objections, but instead on a common-sense assessment of how reasonable jurors may react to the presentation of evidence. This is such a motion. The law is clear, and the evidence is largely uncontroverted: Jeremy Gannon attempted to take vertically-stacked, ten-foot-long flashing off of an elevated shelf at a store belonging to Menard, Inc. ("Menards," referring to both Defendant and the store as context dictates). A piece of flashing fell from the shelf, stabbing Mr. Gannon in the leg and severing a tendon. The issue is whether Menards exercised reasonable care as a matter of law in its storage and display of the flashing. Because a reasonable jury could find that Menards did not act reasonably, summary judgment is inappropriate, and the Court therefore **DENIES** Menards' Motion seeking such for the reasons set forth below.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes

clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512

F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### FACTS FOR SUMMARY JUDGMENT

The following factual background is set forth pursuant to the standards detailed above.[1] The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A. The Incident**

On April 15, 2016, Mr. Gannon visited an Indianapolis Menards to buy some building materials, including flashing, for his garage. [Filing No. 67-4 at 19-20.] He paid for the materials and was told to drive to the back of the building to pick them up. [Filing No. 67-4 at 21.] An employee checked Mr. Gannon's ticket and told Mr. Gannon that he would pick up the other materials while Mr. Gannon selected the flashing. [Filing No. 67-4 at 24.] After being told where

---

[1] The parties are instructed to review the undersigned's Practices & Procedures and to comply with the citation format set forth therein in all future filings. [Filing No. 10 at 3-4; Filing No. 10 at 16-18.]

to go, Mr. Gannon walked to the flashing aisle. [Filing No. 67-4 at 24.] There were no employees in the area. [Filing No. 67-4 at 24.]

The flashing shelf "was a complete bird's nest, of bent pieces, broken pieces," [Filing No. 67 at 5], perhaps appearing (as depicted in a private investigator's photographs of other Menards locations) something like this:



[Filing No. 67-1 at 13; *see* Filing No. 67-5 at 5 (Menards' interrogatory response stating that "metal flashing was generally displayed in a similar manner at each store").]



[Filing No. 67-1 at 11.]



[Filing No. 37-1 at 7.]

As the photographs demonstrate, the flashing was displayed vertically on the shelf with a 1.5-inch lip at the front, designed to retain the flashing and keep it from falling. [Filing No. 67-2 at 19.] The shelf was raised approximately 42 inches off of the floor, [Filing No. 67-5 at 6], and was about three or four feet deep, [Filing No. 67-3 at 28].

Mr. Gannon reached into the shelf, beyond the damaged pieces, to grab for a bundled group of flashing. [Filing No. 67-4 at 28; Filing No. 67-4 at 60.] As he did so, he must have bumped a piece of flashing. [Filing No. 67-4 at 29.] The flashing fell vertically and stuck into Mr. Gannon's right leg, just above his ankle. [Filing No. 67-4 at 30.] Mr. Gannon pulled it out of his leg and threw it on the ground. [Filing No. 67-4 at 30.] Mr. Gannon had difficulty walking but managed to leave the flashing aisle and flag down an employee. [Filing No. 67-4 at 31.] The employee provided Mr. Gannon with a disinfecting spray and bandage and an incident report card. [Filing No. 67-4 at 34.] Mr. Gannon cleaned himself up, filled out the incident report, and left. [Filing No. 67-4 at 34.] Mr. Gannon was diagnosed with a severed tendon, which required surgery. [Filing No. 61-1 at 2.]

### B. Menards' Safety Policies

At least once daily, department managers and general managers inspected the store. [Filing No. 67-2 at 34-35.] Additionally, employees regularly walked through the store, looking for safety concerns. [Filing No. 71-1 at 8.] There was no dedicated inspection, however, for displaced flashing that had moved on top of the shelf lip. [Filing No. 67-2 at 35.] Nor was there any regular schedule for inspecting the flashing section in general. [Filing No. 67-2 at 35.]

When the flashing section was well-organized, it appeared like this:

6



[Filing No. 61-2 at 3.] Of course, on summary judgment the Court must credit Mr. Gannon's recollection that the shelf did not appear this way but instead was disorderly, more like the previous photographs. As depicted in the photograph, Menards had posted yellow signs on the flashing shelves warning shoppers that flashing is sharp.[2] [*See* Filing No. 61-2 at 3.]

### C. Procedural History

Mr. Gannon filed this negligence action against Menards in state court on December 8, 2017, and Menards removed it to this Court on January 29, 2018 based upon the diversity of the parties. [Filing No. 1; Filing No. 1-1.] On December 7, 2018, Menards filed its Motion for Summary Judgment, [Filing No. 59], which is fully briefed and ripe for decision.

## III.
## DISCUSSION

As the Indiana courts have set forth on many occasions, "the tort of negligence" consists of "three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and

---

[2] Mr. Gannon did not see the warning signs, but he acknowledged at his deposition that he knew that the flashing was sharp. [Filing No. 67-4 at 28.]

7

(3) injury to the plaintiff resulting from the defendant's breach." *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). On summary judgment, Menards does not contest that Mr. Gannon suffered a cognizable injury nor that Menards "owe[d] the highest duty" of reasonable care for Mr. Gannon's protection as an invitee. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991).

The only issue is whether Menards complied with its duty as a matter of law based upon the evidence and reasonable inferences in Mr. Gannon's favor that may be drawn therefrom. According to Menards, it did not breach its duty because Mr. Gannon should have protected himself against the known dangers of the flashing and because Menards sufficiently guarded against any risk, including by posting caution signs on the flashing shelf. [Filing No. 60 at 4-5; Filing No. 70 at 4-8.] According to Mr. Gannon, Menards argument misses the mark because the danger that injured him was not the mere sharpness of the flashing, but the danger of the flashing falling from the shelf. [Filing No. 67 at 14-20.] Mr. Gannon argues that this danger was neither obvious nor properly addressed by the safety mechanisms Menards had in place. [Filing No. 67 at 14-20.]

Section 343 of the Second Restatement, the parties agree, provides the applicable standards for the landowner's duty of reasonable care to invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [it]
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Nagel v. N. Indiana Pub. Serv. Co.*, 26 N.E.3d 30, 44 (Ind. Ct. App. 2015) (internal quotation omitted). Indiana has likewise adopted section 343A of the Second Restatement, subsection (1)

of which provides: "A possessor of land is not liable to [its] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (internal quotation omitted). Thus, as the Indiana Court of Appeals has summarized, "while a landowner's duty to a business invitee includes a duty to exercise reasonable care to protect the invitee from foreseeable dangers on the premises, there is no duty to insure a business invitee's safety while on the premises." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012).

Menards begins by arguing that it "complied" with section 343(a) of the Second Restatement.[3] [Filing No. 70 at 4.] Of course, subsection (a) is not something with which one complies—rather, it sets forth the sensible limitation that a landowner must be on actual or constructive notice of an unreasonably dangerous condition in order to be held liable in negligence. *Schulz,* 963 N.E.2d at 1144 (". . . [B]efore liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger."). But for the reasons set forth in Menards' brief, it actually knew of the danger of falling flashing, as indicated by its decision to install a lip on the shelf to prevent the flashing from falling.

Menards' remaining arguments amount to a claim that Mr. Gannon cannot establish subsections (b) and (c) of section 343 because he knew that the flashing was sharp and failed to adequately protect himself and that, regardless, Menards discharged its duty of reasonable care given its safety precautions. As Mr. Gannon admitted at his deposition, he knew that flashing was sharp. But as Mr. Gannon aptly points out, the dangerous condition is not the mere sharpness of

---

[3] Actually, Menards throughout its reply brief argues that it "complied" with section 343. [Filing No. 70 at 3-5.] Section 343 is not a list of requirements with which Menards (or any landowner) must comply, but instead sets forth the conditions precedent for establishing a premises liability claim sounding in negligence. If the undisputed evidence shows that **the plaintiff** cannot establish any one element as a matter of law, then the landowner is entitled to summary judgment.

9

the flashing, but the ease with which it might fall from the shelf and strike a shopper. Posting signs warning that the flashing is sharp does not equate to protection from falling objects.

Though Menards undertook some efforts to prevent injuries from falling flashing, a reasonable jury could find these efforts insufficient. For example, while the lip was designed to prevent flashing from falling from the shelf, Mr. Gannon's testimony and the photographs from other Menards locations raise the reasonable inference that the lip provided insufficient protection because the flashing was easily disturbed and would frequently rest on top of the lip instead of behind it. The frequency with which this occurred (based, again, upon reasonable inferences drawn in Mr. Gannon's favor) likewise suggests that Menards' inspection schedule was insufficient to ensure that the flashing section was safely maintained. Menards, moreover, had other means to provide additional protection, including building the flashing shelf closer to the ground or displaying it horizontally so as to prevent the sort of spearing phenomenon which injured Mr. Gannon. And, ultimately, if flashing could not be removed safely without causing other pieces to fall to the ground, Menards could have prohibited shoppers from obtaining flashing without employee assistance. While the Court does not hold that Menards was required to adopt any or all of these possible additional measures, their ready availability in light of the inadequacy of the shelf lip requires a jury to decide whether Menards exercised reasonable care to protect Mr. Gannon from the known risk of falling flashing.

Finally, the undisputed evidence does not show that Menards would have been justified in expecting customers to protect themselves against the possibility of falling flashing. To this end, Menards argues that it "did not expect an invitee to act so carelessly and fail to to [sic] protect his safety by either removing the front pieces before reaching for the bundled flashing or calling for help." [[Filing No. 70 at 50](#).] Again, while Menards was justified (in this case) in expecting Mr.

Gannon to use caution to avoid cutting himself on the flashing, the evidence on summary judgment does not show that the risk of falling flashing was similarly obvious or that Mr. Gannon failed to protect himself from that risk. There is nothing necessarily unreasonable about reaching into a shelf to grab an item not at the front of the shelf—generally speaking, shelves are designed for that sort of activity, and this shelf was several feet deep—and the evidence does not compel the inference that Mr. Gannon knew that any minor contact with another piece of flashing would cause it to fall off of the shelf. Given the many possible inferences that may be drawn as to the ultimate issue of the reasonableness of the parties' actions, these arguments must be resolved by a jury at trial.

Menards' reliance on the Seventh Circuit's unpublished decision in *Couvillion v. Speedway LLC*, 673 F. App'x 558 (7th Cir. 2016), is misplaced. There, the court affirmed summary judgment where a plaintiff tripped or caught an air hose on a pallet of salt bags while putting air into her tires. *Id.* As the court explained, "[T]he pallet was easy to see (Couvillion admits seeing it) and Speedway had no reason to anticipate that accidents would ensue." *Id.* The plaintiff argued that "she did not appreciate the tripping hazard," but the court rejected her argument because "Indiana law poses an objective inquiry: It asks how owners of business premises should expect reasonable customers to understand and react to risks, not how careless ones might proceed." *Id.* at 559 (citing *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 20 (Ind. Ct. App. 2015)). In other words, summary judgment was proper because tripping over or catching an air hose on a visible pallet was careless as a matter of law.

*Miller*, the case cited by the Seventh Circuit in *Couvillion*, provides a helpful counterpoint. The plaintiff slipped and fell on a sidewalk after a light snowfall. 45 N.E.3d at 14. She knew, moreover, that conditions were slick and that snow had fallen. *Id.* at 23. But the plaintiff's

knowledge of some risk was different than being aware of just how slick the sidewalk had become, and the lack of the latter made summary judgment inappropriate. *Id.*

*Smith v. Baxter*, 796 N.E.2d 242 (Ind. 2003), likewise confirms the proposition that a plaintiff's knowledge of some risk does not necessarily absolve the defendant of liability. In *Smith*, the plaintiff climbed up a ladder covered in dew. *Id.* at 246. The defendants were aware that the ladder was dangerous, and "the plaintiff testified that there was nothing that the defendants could have told him about the ladder that he did not already know"—suggesting that the plaintiff, too, recognized that there was danger in climbing the ladder. *Id.* Nonetheless, the Indiana Supreme Court affirmed the jury verdict for the plaintiff, recognizing that it was "a much closer question as to whether there was substantial evidence that (1) the defendants should have expected that the plaintiff would not discover or realize the danger, or fail to protect himself against it, and (2) the defendants should have anticipated the harm despite the plaintiff's knowledge or the obvious nature of the risk." *Id.*

This case falls much closer to *Miller* and *Smith* than it does to *Couvillion*. In particular, the *Miller* plaintiff acknowledged and appreciated that some snow had fallen and that it could be slick. She failed to appreciate, however, just how slick the sidewalk had become. Here, notwithstanding the "bird's nest" of flashing, nothing compels the conclusion that Mr. Gannon should have been aware of just how precarious the flashing was stored such that it could fall by being bumped. Tripping or catching an air hose on an obstruction such as a pallet will almost always produce the result in *Couvillion*, where the plaintiff fell and injured herself. In contrast, a reasonable jury may well conclude that Mr. Gannon did not fail to protect himself in reaching into the flashing shelf and lightly bumping a piece of flashing. In fact, the jury may conclude that the reason the flashing fell was not because Mr. Gannon failed to protect himself, but because the

flashing was stored and displayed in an unsafe manner. Summary judgment is therefore inappropriate in this case.

## IV.
### CONCLUSION

For the reasons set forth above, the Court **DENIES** Menards' Motion for Summary Judgment [59]. If the parties cannot resolve this matter at or prior to the July 19, 2019 settlement conference, then a jury will do so at the September 9, 2019 trial. The Court asks the Magistrate Judge to attempt an agreed resolution.

Date: 3/29/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**